IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE MUNOZ, on behalf of herself and others similarly situated,<br>*Plaintiff,*<br>v.<br>GOLDBERG, MILLER & RUBIN, P.C.,<br>*Defendant.* | CIVIL ACTION<br>NO. 21-297 |

**PAPPERT, J.**                                                                                                            October 21, 2021

**MEMORANDUM**

      Grace Munoz, a paralegal, sued her former employer, Goldberg, Miller & Rubin, P.C., on behalf of herself and others similarly situated alleging they were misclassified as exempt employees and owed overtime wages under the Fair Labor Standards Act, Pennsylvania Minimum Wage Act, New Jersey Wage Act, New York Minimum Wage Act, New York Payment of Wages Act, New York Labor Laws and other legal requirements. (*See* Compl., ECF 1.) One other similarly situated employee – Joharis Byas – "opted in" to this collective action. The parties reached a settlement of Munoz and Byas's individual claims and now move for the Court's approval. The Court grants the Motion and approves the settlement.

I

      Munoz worked for Goldberg, Miller & Rubin as a paralegal from approximately May 2, 2019 through November 3, 2020. (Pl.'s Mem., ECF 33-1 at 1.) She claims she regularly worked fifty to fifty-five-hours per week (i.e., ten to eleven hours per day five days per week). (*Id.* at 1-2.) Byas claims she routinely worked forty-five to fifty hours per week (i.e., nine to ten hours per day) during her brief term as a firm paralegal from

1

December 23, 2019 through January 13, 2020.  (*Id.* at 2.)

Goldberg, Miller & Rubin denies the material allegations and claims in the Complaint.  (*Id.*)  It contends "it maintained a policy prohibiting paralegals from working more than forty[ ] hours per week" and required "written approval in advance of any overtime work."  (*Id.*)  The firm contends it performed an investigation into Munoz's alleged overtime and, although it disagreed with her assertions, paid her "for all claimed overtime hours."  (*Id.*)  Specifically, it paid Munoz approximately $3,606 in July 2019 based on her contention that she worked 100 hours of overtime.  (*Id.*)  Munoz contends the payment did not account for all the overtime she worked beyond that date until her departure from the firm.  (*Id.*)  Byas never received overtime compensation during her short time at the firm.  (*Id.*)  Goldberg, Miller & Rubin contends she was in training for the first two weeks of her employment and, during her third and final week, "she did not work any overtime."  (*Id.*)

The Court conditionally certified a FLSA collective in March 2021.  (ECF 27.)  In April, Plaintiffs' counsel filed a Notice of Byas's Consent to Join the Collective Action along with the consent of a second person.  (ECF 29-1.)  The second opt-in withdrew his consent to join the action on June 4.  (ECF 31.)  That month, the parties commenced an exchange of settlement offers and counteroffers and attended an unsuccessful settlement conference with Magistrate Judge Elizabeth Hey.  (Pl.'s Mem., ECF 33-1 at at 2-3.)  They continued their arms-length negotiations thereafter and, one week later, reached an agreement to settle Munoz's and Byas's claims on an individual basis.  (*Id.* at 3.)

Under the agreement's terms, Munoz will receive $3,125.00, less lawful

2

deductions for her alleged unpaid wages and $3,125.00 for alleged liquidated damages, statutory penalties and a release of her claims. (Pl.'s Mem. (Ex. A.), ECF 33-2 at ¶¶ 4a-b.) For her alleged unpaid wages, Byas will receive $100.05, less lawful deductions. (*Id.* ¶ 4c.) She will receive the same amount for alleged liquidated damages, statutory penalties and a release of her claims. (*Id.* ¶ 4d.) The parties now ask the Court to approve their settlement.

## II
### A

Congress enacted the FLSA to correct and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers . . . " 29 U.S.C. § 202. It concluded that such conditions create unfair competition, lead to labor disputes, burden commerce and the free flow of goods and interfere with orderly and fair marketing of goods. *Id.* The statute guards against "unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706 (1945).

Parties may settle FLSA claims by reaching a compromise supervised by either the Department of Labor or by a district court. *See* 29 U.S.C. § 216(b), (c); *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016). Although the Third Circuit has not addressed whether parties may settle FLSA claims without court approval, most district courts in this Circuit deem it necessary. *See Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773, 776 (E.D. Pa. 2016).

#### i

To approve the parties' settlement, the Court must find it resolves a bona fide dispute – that is, one involving "factual issues rather than legal issues such as the

[FLSA's] coverage and applicability." *Id.* at 777 (internal quotations omitted). There is such a dispute here, as the parties disagree about the hours Munoz and Byas worked and the compensation owed to them, if any. Whether Plaintiffs were entitled to overtime compensation and how much might be owed presents "an issue of fact that is precisely the kind of dispute that qualifies as a bona fide dispute." *Katherine Devine v. Ne. Treatment Ctrs., Inc.*, No. 20-02417, 2021 WL 4803819, at *2 (E.D. Pa. Oct. 14, 2021); *see also Joseph v. Caesar's Ent. Corp.*, No. 10-6293, 2012 WL 12898816, at *2 (D.N.J. July 23, 2012) ("A disagreement over hours worked or compensation due clearly establishes a bona fide dispute.") (citations and internal quotations omitted).

ii

Because the settlement resolves a bona fide dispute, the Court considers whether it is "fair and reasonable" for the employees. *Howard*, 197 F. Supp. 3d at 777. This standard applies "to assess the propriety of FLSA collective action settlements and private (i.e., single-plaintiff) FLSA settlements alike." *Id.* To make this determination in the context of an FLSA settlement, courts often consider the factors used to evaluate the fairness of class action settlements. *See Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975); *Kraus*, 155 F. Supp. 3d at 523 n.3 (discussing whether and how courts should apply the *Girsh* factors in FLSA actions). When considering the settlement of individual FLSA claims, however, "at least some of the *Girsh* factors appear to be little help, if not irrelevant" and "courts need not fall into the alluring trap of mechanically applying *Girsh* . . . ." *Howard*, 197 F. Supp 3d at 777 n.1 (citation omitted). Here, the relevant factors include: the complexity, expense and likely duration of the litigation; the stage of the proceedings and the amount of discovery completed; the risks

of establishing liability and damages; and the best possible recovery balanced against the attendant risks of litigation. *See Girsh*, 521 F.2d at 157.

Although the case is not complex, litigating it would be expensive and time-consuming. Absent a settlement, the parties would expend time and money on discovery, contested motions for class certification and summary judgment and possibly a trial. (Pl.'s Mem., ECF 33-1 at 6.)

Counsel also "adequately appreciated the merits of the case while negotiating . . . ." *DiFlavis v. Choice Hotels, Int'l, Inc.*, No. 18-3914, 2020 WL 6728806, at *3 (E.D. Pa. 2020) (citation and internal quotation omitted). Plaintiffs' counsel prepared and served seven deposition notices, interrogatories and requests for production of documents before the parties ultimately agreed to stay discovery while pursuing a settlement. (Pl.'s Mem., ECF 33-1 at 7.) In February, they received detailed payroll information from the firm for forty-seven members of the putative collective and used the information to prepare a complex damage model and Plaintiffs' settlement demand. (*Id.*) The payroll documents, the parties' settlement conference with Magistrate Judge Hey and their other settlement discussions provided enough information to support settlement approval.

In addition, Plaintiffs risk being unable to establish liability at trial due to an absence of time records. (*Id.* at 7-8.) Nevertheless, Munoz estimates her unpaid overtime wages are $5,348.10, while Byas estimates she is owed $200.10 in unpaid overtime. (*Id.* at 8.) The proposed settlement will award Munoz more than her estimated unpaid overtime and Byas will receive the full amount she claims is due. (*Id.*) The proposed settlement will fairly compensate Plaintiffs for their alleged unpaid

time considering the possibility that they might not have evidence needed to support their claims.

Also, given the small size of the collective – just two individuals – and the absence of time records, success in litigation is not assured for either side. As the firm continues to deny all material allegations and claims, there is a chance Plaintiffs would not succeed in recovering the amounts they seek. (*Id.* at 8-9.) Were this matter to proceed to trial, the best possible recovery for Munoz and Byas – including liquidated damages if the firm cannot mount a good-faith defense – would be $10,696.20 and $400.20, respectively. (*Id.*) Balancing the attendant risks of litigation and the best possible recovery supports approval of the settlement.

iii

The Court then must consider whether the settlement "furthers or impermissibly frustrates" the FLSA's implementation in the workplace. *Howard*, 197 F. Supp. 3d at 777. Courts considering proposed FLSA settlements caution against "overly burdensome confidentiality agreements, overbroad release language, or sealed filings." *VanOrden v. Lebanon Farms Disposal, Inc.*, No. 17-1310, 2019 U.S. Dist. LEXIS 181897 at *4 (M.D. Pa. Oct. 18, 2019). The parties' proposed agreement does not include any provisions which would be antithetical to the statute's aims. It includes no confidentiality provision and there are no sealed filings. The agreement's release is limited to claims specific to this litigation and does not apply to events occurring after the agreement's date. Further, the release and Plaintiffs' waiver of future employment by the firm are supported by consideration beyond any amount due for their alleged unpaid hours. *Cf. Lyons v. Gerhard's Inc.*, No. 14-6693, 2015 WL 4378514, at *5 (E.D.

Pa. July 16, 2015) (approving settlement containing general release where half the payment to plaintiff was for non-wage compensatory damages). Approving the settlement does not frustrate the FLSA's purpose.

B

In approving FLSA settlements, courts may "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also Kraus*, 155 F. Supp. 3d at 533. Courts determine attorneys' fees under either the percentage-of-recovery method or the lodestar method. *In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014). The percentage of recovery approach "awards a fixed portion of the settlement fund to counsel." *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 658 (E.D. Pa. 2020) (citations omitted). Although it is generally favored in wage and hour cases in the Third Circuit, *see id.*, the Court declines to apply it here given the ultimate settlement is a one of individual claims, and is not on behalf of a larger FLSA collective.

The total payment due to Munoz and Byas is just $6,450.10, less any lawful deductions. (*See* Pl.'s Mem. (Ex. A.), ECF 33-2 at ¶ 4e.) Pursuant to the parties' agreement, Plaintiffs' counsel is entitled to receive $38,549.90 in fees and costs. (Pl.'s Mem. (Ex. A.), ECF 33-2 at ¶ 4e.) $811.16 in costs have been advanced in this litigation on Plaintiffs' behalf ((Pl.'s Mem., Jason Thompson Decl. (Ex. B), ECF 33-3 at ¶ 17), a reasonable sum proportional to the litigation's complexity. However, $36,549.90 (i.e. $38,549,90 - $811.6 (costs)) is 569.58% of the payment due to Plaintiffs before any deductions. Using the percentage of recovery approach in the circumstances presented by this settlement suggests the negotiated fee award is unreasonable.

Application of the lodestar formula (as Plaintiffs do in their motion) yields a

7

different result.  It multiplies the reasonable number of hours expended by a reasonable hourly rate.  *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177-78 (3d Cir. 2001) (internal citations omitted). "When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Id.* (internal citations omitted).  Plaintiffs' counsel have expended 254.58 hours on this case.  (Pl.'s Mem., ECF 33-1 at 13.)  The time spent over the seven months between filing the Complaint and the Motion for settlement approval is reasonable in light of the steps required to reach a resolution of Plaintiffs' claims, including discovery and analysis of payroll information for forty-seven members of the putative collective and settlement efforts including the conference with Magistrate Judge Hey.

Plaintiffs posit that if a fee award was calculated using the lodestar method based on a "blended firm rate of $373.04 per hour" derived from the participating attorneys' hourly rates (ranging from $725 per hour down to $300 per hour), it would result in an $88,646.35 fee award.  (Pl.'s Mem., ECF 33-1 at 13.)  The attorneys' hourly rates are consistent with prevailing market rates given counsel's experience and skill. (*See* Pl.'s Mem., Jason Thompson Decl. (Ex. B), ECF 33-3 at ¶¶ 3-6, 12-16; Pl.'s Mem. Jason Thompson Bio. (Ex. C).)  *See also Loughner*, 260 F.3d at 180 (3d Cir. 2001) ("Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community.")  If, instead, an award was calculated using the lowest hourly rate of a participating attorney (i.e., $300), it would equal $76,374.00.  As the fee award stands, it represents a substantially lower hourly rate of $148.24 (i.e. $38,549,90 - $811.6 (costs) = $36,738.74.; $36,738.74 ÷ 254.48 hours = $148.24/hour), an

appropriate reduction given the eventual failure to have more than one opt-in plaintiff from a putative class of forty-seven. When compared to the actual lodestar fees claimed to be incurred in the prosecution of this case, the negotiated fee award represents a significant reduction. It is reasonable as required by 29 U.S.C. § 216(b).

    An appropriate Order follows.

                                          BY THE COURT:

                                          ***/s/ Gerald J. Pappert***
                                          GERALD J. PAPPERT, J.